**FILED**
U.S. District Court
District of Kansas

JAN **1 7** 2020

Clerk, U.S. District Court
By ____ Deputy Clerk

**UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil No. 6:17-cv-01310 |
| | ) |
| THONG CAO, INDIVIDUALLY AND | ) |
| D.B.A. CAO PROPERTIES & | ) |
| RENTALS, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

**CONSENT ORDER AND JUDGMENT**

**I.    INTRODUCTION**

1.    This action was filed by the United States of America on December 18, 2017, and

amended on March 29, 2018, to enforce Title VIII of the Civil Rights Act of 1968 (the Fair

Housing Act). 42 U.S.C. §§ 3601-3631.  The United States alleges that Defendants Thong Cao,

individually and d/b/a/ Cao Properties and Rentals, and Mai Cao (collectively, "Defendants"),

have engaged in a pattern or practice of resistance to the full enjoyment of rights granted by the

Fair Housing Act, and denied to a group of persons rights granted by the Fair Housing Act that

raise an issue of general public importance, in violation of 42 U.S.C. § 3614(a).

2.    The United States alleges that, from at least 2009 through 2014, Defendant Thong

Cao subjected multiple female tenants of the Defendants' residential rental properties to

discrimination on the basis of sex, including severe, pervasive, and unwelcome sexual

harassment and retaliation, including but not limited to the following:

   a.   Making unwelcome sexual comments and unwelcome sexual advances to
        female tenants;

   b.   Subjecting female tenants to unwelcome sexual contact, including
        grabbing their breasts and buttocks without their consent;

   c.   Conditioning tangible housing benefits—such as forgiving or reducing
        rent—in exchange for sex; and

   d.   Taking adverse housing actions, such as seeking to have tenants evicted or
        refusing to make repairs, or threatening to take such actions, against
        female tenants who objected to and/or refused sexual advances.

   3.   The United States alleges that Defendant Thong Cao's conduct was intentional,
willful, and/or taken in reckless disregard for the rights of others.

   4.   The United States alleges that the conduct described above constitutes: a pattern
or practice of resistance to the full enjoyment of the rights granted by the Fair Housing Act, 42
U.S.C. §§ 3601, *et seq.*; and a denial to a group of persons of rights granted by the Fair Housing
Act, 42 U.S.C. §§ 3601, *et seq.*, raising an issue of general public importance.

   5.   The United States alleges that Defendant Mai Cao is liable for Thong Cao's
discriminatory conduct because, during the time period in which Thong Cao allegedly engaged
in unlawful sexual harassment, she either co-owned certain rental dwellings with Defendant
Thong Cao or exclusively owned rental dwellings managed by Defendant Thong Cao. On May
28, 2019, Mai Cao filed a motion for partial summary judgment, asserting that she was not
vicariously liable for Thong Cao's misconduct because there was insufficient evidence to
demonstrate that she acted as Thong Cao's principal. The Court denied Mai Cao's motion on
October 28, 2019.

6.      The United States alleges that Defendants' discriminatory conduct injured female tenants.  Such persons are "aggrieved persons" as defined in 42 U.S.C. § 3602(i) and have suffered damages as a result of Defendants' conduct.

7.      All parties have agreed that in order to avoid protracted and costly litigation, this action should be resolved without a trial and adjudication of the facts alleged by the United States.  Therefore, the parties consent to the entry of this Consent Order and Judgment ("Consent Order").

8.      This Consent Order shall not constitute an admission or acknowledgment of liability by Defendants or a determination by the Court on the merits of any claims asserted by the United States.

9.      This Consent Order constitutes full resolution of all claims asserted against Defendants by the United States in this action

10.     The parties agree that this Court has jurisdiction over this action under 28 U.S.C. § 1331, 28 U.S.C. § 1345, and 42 U.S.C. § 3614(a).

11.     The parties agree that this Consent Order will constitute entry of a civil judgment.

**ACCORDINGLY, it is hereby ADJUDGED, ORDERED and DECREED:**

## II.      SCOPE AND TERM OF THE CONSENT ORDER

12.     The provisions of this Consent Order shall apply to Defendants, their officers, employees, agents, assigns, successors-in-interest, and all persons or entities who engage in the residential rental property business with, or are in active concert or participation with, any of them.

3

13.     This Consent Order is effective immediately upon its entry by the Court.  For purposes of this Consent Order, the phrases "effective date" and "date of this Consent Order" shall refer to the date on which the Court enters this Consent Order.

14.     Unless otherwise specified or extended pursuant to Paragraph 53, the provisions of this Consent Order shall be in effect for a period of five (5) years from the effective date of this Consent Order.  The case is hereby dismissed with prejudice, except that the Court shall retain jurisdiction for a period of five (5) years after the effective date, for the purpose of enforcing or interpreting the provisions of this Consent Order.

15.     As used in this Order, the term "**Subject Properties**" refers to 827 N. Glendale Avenue, 837 N. Glendale Avenue, 826 N. Oliver Avenue, and 837 N. Oliver Avenue.

16.     As used in this Order, the term "**Property Management Responsibilities**" includes, with respect to any residential rental dwelling: advertising dwelling units for rent; showing or renting housing units; processing rental applications; supervising or performing repairs or maintenance; negotiating rents or security deposits; determining tenant eligibility for subsidies or waivers of fees or rent; determining whom to rent to, whom to seek to evict, and/or whose lease to renew or not renew; inspecting dwelling units; collecting rent and fees; overseeing any aspects of the rental process; or engaging in any other property-related activities that involve, or may involve, direct or indirect personal contact with tenants or prospective tenants; operating, consulting, managing, staffing, participating in, working in (whether paid or unpaid), or otherwise having any involvement in the management, or maintenance of rental dwellings, including but not limited to those owned and/or managed by any Defendant in this action.

**III.   INJUNCTIVE RELIEF**

17.    Defendants, their officers, agents, employees, successors and assigns, and all other persons or entities in active concert or participation with them, are hereby enjoined from:

> a.  Discriminating in the sale or rental, or otherwise making unavailable or denying, a dwelling to any buyer or renter because of sex;
>
> b.  Discriminating against any person in the terms, conditions or privileges of renting a dwelling unit, or in the provision of services or facilities in connection therewith, because of sex;
>
> c.  Making, printing, publishing, or causing to be made, printed, or published any notice, statement, or advertisement with respect to the rental of a dwelling unit that states any preference, limitation, or discrimination based on sex; or
>
> d.  Coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of, or on account of her having exercised or enjoyed, or on account of her having aided and encouraged any other person in the exercise or enjoyment of, any right granted by the Fair Housing Act, 42 U.S.C. §§ 3601-3631.

18.    Defendant Thong Cao is hereby permanently enjoined from directly or indirectly engaging in or conducting any Property Management Responsibilities as defined in this Order, regardless of who owns the property.

19.    Defendants are hereby permanently enjoined from using any property they currently own or acquire in the future as a residential rental property, with the exception of the Subject Properties as addressed in Section IV, *infra*.

5

20.     Defendants shall be permanently prohibited from purposefully or knowingly engaging in contact or communications, either directly or indirectly, with: (a) any current or past tenant of the Subject Properties or (b) any current or past tenant of any residential rental property in which any Defendant had any Property Management Responsibilities or any ownership interest, financial interest, or control interest at any time between January 1, 1996, through the term of this Order, including but not limited to any person identified as an aggrieved person pursuant to Paragraph 28 below. "Contact or communications" includes, but is not limited to, physical contact, verbal contact, telephone calls, e-mails, faxes, written communications, text or instant messages, contacts through social media, or other communications made through third parties.

21.     In the event that either defendant inadvertently or unintentionally initiates any contact with any person described in Paragraph 20, or such person initiates such contact with either defendant, that Defendant will immediately discontinue the contact or communication and take all reasonable steps to avoid any further contact or communication

**IV.     REQUIREMENT TO SELL THE SUBJECT PROPERTIES**

22.     Defendants shall sell or transfer the Subject Properties to a bona fide, independent third-party purchaser(s) in an arms-length transaction(s) within two years of the date of this Consent Order.  For purposes of this Order, except as provided in Paragraph 23 below, a "bona fide, independent third-party purchaser" is one with whom Defendants have no current or past financial, contractual, personal or familial relationship.  An "arms-length transaction" is one that has been arrived at in the marketplace between independent, non-affiliated persons, unrelated by blood or marriage, with opposing economic interests regarding the transaction.  The United

States agrees to fully cooperate in releasing any lien on the Subject Properties in order to effectuate a sale pursuant to this paragraph.

23.     On September 28, 2018, Defendants entered into an Option to Purchase Agreement with Judy and Francis Bias ("Buyers") to sell the Subject Properties (the "Purchase Agreement"). Pursuant to the Purchase Agreement, the Buyers were granted an option to purchase the Subject Properties. Defendants represent that Buyers have been making payments of at least $2,500 per month under the Purchase Agreement. Upon the transfer of full legal title to the Subject Properties from Defendants to Buyers, Defendants shall satisfy their obligations pursuant to Paragraph 22.

24.     Within ten (10) days of the sale or transfer of the Subject Properties, as set forth in Paragraph 22, Defendants shall provide the United States with the date of the sale or transfer and provide copies of the documents memorializing the sale or transfer, and contact information for the subsequent purchaser.

25.     Between the effective date of this Consent Order and the date of sale or transfer of the Subject Properties, a third party will perform all Property Management Responsibilities at the Subject Properties. Defendants represent that Buyers are currently performing these functions at the Subject Properties.

26.     If the Purchase Agreement between Defendants and Buyers is not effectuated, prematurely terminated, and/or is defaulted on, and Defendants are unable to sell or transfer the Subject Properties to Buyers as set forth in Paragraph 23, Defendants shall:

> a.     Notify the United States within five (5) days of the termination of the
> Purchase Agreement or default by one of the parties to the Purchase

7

Agreement, or immediately upon Defendants' repossession of the Subject
Properties, whichever is earlier.

b.      Retain an independent manager to perform all Property Management
        Responsibilities at the Subject Properties. Defendants shall submit the
        name of the proposed manager to the United States for written approval at
        least ten (10) days prior to retaining the individual or entity. The proposed
        manager must be an individual or entity experienced in managing rental
        properties and who has no current or past employment, financial,
        contractual, personal, or familial relationship with any Defendant.
        Approval by the United States shall not be unreasonably withheld. Should
        Defendants wish to change managers at any time, they shall submit the
        name of the prospective manager to the United States for written approval
        at least ten (10) days prior to retaining the individual or entity. All costs
        resulting from retention of an independent manager shall be borne by
        Defendants.

c.      Implement, subject to the United States' approval, a written policy against
        sexual harassment, including a formal complaint procedure. A copy of
        this policy and procedure shall be provided to counsel for the United
        States within thirty (30) days of the termination or default under the
        Purchase Agreement. This policy and procedure will be implemented
        within five (5) days after the United States indicates that the policy and
        procedure are satisfactory to the United States. At that time the

8

independent manager shall notify all current tenants of the Subject Properties of the policy and procedure.

d.   Attend an in-person training on the Fair Housing Act, including the Act's provisions related to sex and sexual harassment discrimination and discriminatory statements within sixty (60) days of the termination or default under the Purchase Agreement. The trainer or training entity must be approved in advance by the United States. Defendants will bear the cost of any expenses associated with this training. Defendants will obtain from the trainer or training entity certificates of attendance, and provide proof of such training to the United States. Defendants shall arrange for an interpreter to be present at such in-person training to translate the content from English to Vietnamese.

e.   Ensure that any persons involved in performing Property Management Responsibilities with respect to the Subject Properties are familiar with the requirements of the FHA, particularly as they pertain to discrimination on the basis of sex and sexual harassment, and with this Consent Order.

f.   Require that all advertising conducted for the Subject Properties in newspapers, telephone directories, radio, television, Internet websites, social media, or other media, and all billboards, signs (including at the properties), pamphlets, brochures, and other promotional literature, include either a fair housing logo, the words "equal housing opportunity provider," and/or the following sentence: "We are an equal opportunity housing provider. We do not discriminate on the basis of race, color,

9

national origin, religion, sex, familial status, or disability." The words or logo shall be legible and prominently placed.

g.   Maintain all rental records kept in relation to rental of the Subject Properties and allow the United States to inspect and copy such records upon reasonable notice.

h.   Notify the United States within ten (10) days of the receipt of any written or oral complaint of discrimination submitted by a tenant or applicant for housing, or of any improper involvement or interference by Defendants at any Subject Property, and provide the United States with all records related to the complaint.

## V.   COMPLIANCE TESTING

27.   The United States may take steps to monitor the Defendants' compliance with this Consent Order, including, but not limited to, conducting fair housing tests at any residential rental properties owned, operated, or controlled by the Defendants.

## VI.   MONETARY DAMAGES FOR AGGRIEVED PERSONS

28.   Defendants agree to pay a total sum of **ONE HUNDRED FIFTY-FIVE THOUSAND DOLLARS ($155,000)** for the sole purpose of compensating those persons whom the United States has determined may have been harmed by the Defendants' discriminatory housing practices (hereinafter "aggrieved persons").

29.   Within thirty (30) days of the effective date of this Order, Defendants shall pay a total of **NINETY-FIVE THOUSAND DOLLARS ($95,000)** to the aggrieved persons listed in

Appendix A, by delivering to counsel for the United States, by overnight delivery[1], checks payable to each aggrieved person listed in Appendix A.

30.     Within five (5) days of the effective date of the Order, the United States will provide Defendants with a list of the amounts that should be paid to each aggrieved person pursuant to Paragraph 29.

31.     Within two (2) years of the effective date of this Order, Defendants shall pay a total of **SIXTY THOUSAND DOLLARS ($60,000)** to compensate aggrieved persons.

32.     For the purpose of complying with Paragraph 31, within fourteen (14) days of the effective date of this Order, the Defendants shall establish an interest-bearing escrow account ("Escrow Account") and immediately deposit a sum of two thousand five hundred dollars ($2,500). The Escrow Account shall be established for the sole purpose of compensating aggrieved persons. Within five (5) business days of the establishment of the Escrow Account, the Defendants shall submit proof to the United States that the account has been established and the funds deposited.

33.     Within fourteen (14) days of the effective date of this Order, the Defendants shall identify a third-party individual to serve as Administrator of the Escrow Account. The Administrator must be approved in writing by the United States. Defendants shall bear any costs associated with the Administrator.

34.     After establishment of the Escrow Account, the Defendants shall continue to make monthly deposits into the Escrow Account of at least two thousand five hundred dollars

---

[1] All documents, instruments, and written materials required by this Consent Order to be sent to the United States shall be sent by commercial (not by United States Postal Service) overnight delivery service, addressed as follows: Chief, Housing & Civil Enforcement Section, Civil Rights Division, United States Department of Justice, 150 M St. NE, 8th Floor, Washington, D.C. 20001, Attn: DJ 175-29-118.

($2,500) until a total amount of sixty thousand dollars ($60,000) has been deposited. Defendants agree to deposit any and all amounts received pursuant to the Purchase Agreement into the Escrow Account, including an amount over $2,500 if they received a payment from Buyers greater than that amount in any given month. However, Defendants shall be responsible for making monthly payments of at least $2,500 per month regardless of whether any payments are received from Buyers pursuant to the Purchase Agreement.

35.    On or before the fifteenth of each month, Defendants shall provide proof to the United States of their deposits into the Escrow Account for the previous month. Beginning three (3) months after the effective date of this Order, and every three (3) months thereafter, Defendants shall provide a report to the United States showing all amounts received from Buyers in the preceding three months.

36.    Defendants shall provide an accounting of the Escrow Account upon request by the United States.

37.    Any interest accruing to the Escrow Account shall become a part of the Escrow Account and be utilized as set forth herein.

38.    The Defendants shall be solely responsible for any taxes assessed or owed on any interest earned on money deposited to the Escrow Account.

39.    When Defendants have deposited the full amount of sixty thousand dollars ($60,000) into the Escrow Account, the United States will provide Defendants with a list of aggrieved persons and the amount of additional damages that each aggrieved person should receive. Within ten (10) days of receipt of the United States' determinations, the Administrator shall deliver to counsel for the United States, by overnight delivery, checks payable to each

aggrieved person in the amount specified by the United States. The Defendants shall ensure that the Administrator issues checks in accordance with this paragraph.

40.     The United States reserves the right to request disbursement of funds from the Escrow Account at any time prior to Defendants' deposit of the full amount of sixty thousand dollars ($60,000).

41.     In no event shall the aggregate of all such checks issued from the Escrow Account exceed the sum of the Escrow Account plus accrued interest.

42.     If a check issued by Defendants has not been deposited, the United States may request that Defendants cancel the check and reissue a check in a different name and/or in a different amount.

43.     The Defendants agree that all disbursement determinations of the United States with respect to aggrieved persons shall be final, and Defendants hereby waive the right to contest the United States' determinations in this or any other proceeding. Defendants hereby agree that they will not seek to interfere with or oppose the United States' determinations regarding the aggrieved persons and the appropriate amount of damages paid to each aggrieved person.

44.     When counsel for the United States has received a check from the Defendants payable to an aggrieved person and a signed release in the form of Appendix B from the aggrieved person, counsel for the United States shall deliver the check to the aggrieved person and a copy of the signed release to the Defendants. No aggrieved person shall be paid until that person has executed and delivered to counsel for the United States the release at Appendix B.

45.     The compensation required to be paid pursuant to Paragraphs 29 and 31 is a debt within the meaning of 11 U.S.C. § 523(a)(6). The Defendants shall not seek to discharge any part of this debt in bankruptcy.

13

## VII.  CIVIL PENALTY

46.     Within thirty (30) days of the effective date of this Order, Defendants shall pay

**FIVE THOUSAND DOLLARS ($5,000**) to the United States as a civil penalty pursuant to 42

U.S.C. §3614(d)(1)(C).  This payment shall be in the form of an electronic funds transfer

pursuant to written instructions to be provided by the United States.

47.     The civil penalty referenced in Paragraph 46 is a debt for a fine, penalty, or

forfeiture payable to and for the benefit of the United States within the meaning of 11 U.S.C.

§ 523(a)(7) and is not compensation for actual pecuniary loss.  The Defendants shall not seek to

discharge any part of this debt in bankruptcy.

48.     In the event that Defendants, their agents, or employees engage in any future

violation(s) of the Fair Housing Act, such violation(s) shall constitute a "subsequent violation"

pursuant to 42 U.S.C. § 3614(d)(1)(C)(ii).

## VIII.  RELIANCE ON FINANCIAL REPRESENTATIONS

49.     Defendants have provided information about their financial situation to counsel

for the United States in this case, as described in their Financial Statement of Debtor, signed by

Thong Cao on January 14, 2020 and by Mai Cao on January 17, 2020 ("Disclosures").  The

United States has relied on the accuracy and completeness of the information described in the

Disclosures in entering into this agreement and particularly with respect to the payments set forth

in sections VI and VII, *supra*.  Defendants warrant that the financial information they provided is

thorough, accurate, and complete.  Defendants warrant that they do not own or have an interest

in any other asset(s) – either non-liquid or liquid assets, including cash in an amount higher than

two thousand dollars ($2,000) – that have not already been disclosed to counsel for the United

States in this case. Defendants warrant that they have made no misrepresentations in, or in connection with, the financial information provided to counsel for the United State in this case.

50.     If, prior to the expiration of the term of this Order, the United States learns of (i) additional income or assets in which the Defendants had an interest at the time of signing this Order that would change their estimated net worth by five thousand dollars ($5,000) or more and that was not disclosed to counsel for the United States, or (ii) a misrepresentation by Defendants on, or in connection with the financial information provided to counsel for the United States that would change their estimated net worth by five thousand dollars ($5,000) or more, the United States shall move the Court to modify this Order to require Defendants to pay additional amounts to aggrieved persons up to an amount of fifty thousand dollars ($50,000).

51.     As security for the sixty thousand dollar ($60,000) payment required under Paragraph 31 Defendants grant the United States a security interest in the commercial property located at 530 E. Central Avenue. After entry of the Consent Order, the United States will file an abstract of judgment with the Sedgwick County Register of Deeds to reflect the United States' judgment lien consistent with 28 U.S.C. § 3201. When Defendants deposit the full amount of sixty thousand dollars ($60,000) into the Escrow Account and counsel for the United States has received the additional checks for aggrieved persons as set forth in Paragraph 39, the United States will take the appropriate steps to release its lien on the property.

52.     The parties agree that this Consent Order will constitute entry of a civil judgment against Defendants in the amount of one hundred sixty thousand dollars ($160,000).

## IX.   MISCELLANEOUS TERMS

53.    Without further order of the Court, the parties may mutually agree, in writing, to reasonable extensions of time to carry out any provisions of the Consent Order.  In addition, the United States may move the Court to extend the terms of this Consent Order for good cause.

54.    Defendants have provided the United States with their current contact information including their home address, telephone numbers, and email addresses.  Defendants shall notify the United States within ten days if there is any change in their contact information.

55.    The United States may review compliance with this Consent Order at any time. Defendants agree to cooperate with the United States in any review of compliance with this Order and to provide, upon reasonable notice, any information reasonably related to compliance with this Consent Order that is requested by the United States.

56.    The parties to this Consent Order shall endeavor in good faith to resolve informally any differences regarding the interpretation of and compliance with this Consent Order prior to bringing such matters to the Court for resolution.  If the United States has a good faith basis to believe that there has been a failure by any Defendant to perform in a timely manner any act required by this Consent Order, or otherwise to act in conformance with any provision thereof, whether intentional or not, the United States will notify Defendants in writing of its concerns.  The parties will attempt to resolve those concerns in good faith.  If the parties are unable to reach a resolution within thirty (30) days, any party may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance or non-performance of certain acts and an award of any damages, costs, and attorneys' fees which may have been occasioned by non-actions or actions.

57.     Failure of a party to insist upon strict performance of any provision of this Consent Order shall not be deemed a waiver of the party's rights or remedies or a waiver by the party of any default by another party in performance or compliance with any terms of this Consent Order.

58.     This Consent Order may be signed by the parties in several counterparts, each of which shall serve as an original as against any party who signed it, and all of which taken together shall constitute one and the same document.

59.     Each signatory hereto warrants that he or she is competent and possesses the full and complete authority to covenant to this Consent Order on behalf of himself, herself, or the party that he or she represents.

60.     The parties agree that, as of the effective date of this Consent Order, litigation is not "reasonably foreseeable" concerning the matters described in the United States' Complaint. To the extent that any of the parties previously implemented a litigation hold to preserve documents, electronically stored information (ESI), or things related to the matters described in the Complaint, they are no longer required to maintain such a litigation hold. Nothing in this paragraph relieves any of the parties of any other obligations imposed by this Consent Order.

61.     The United States and the Defendants will bear their own costs and attorneys' fees associated with this litigation.

62.     This Consent Order contains the entire agreement between the United States and Defendants with regard to the matters set forth herein. There are no other understandings or agreements, verbal or otherwise, in relation thereto, between the parties except as herein expressly set forth.

**The undersigned apply for and consent to the entry of this Consent Order and Judgment:**

Dated:   January 17, 2020

**FOR THE PLAINTIFF THE UNITED STATES:**

STEPHEN R. McALLISTER
United States Attorney
District of Kansas

_/s/ Andrea Taylor_____
ANDREA TAYLOR
Assistant United States Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101
Phone: (913) 551-7630
Fax: (913) 551-6541
Email: Andrea.Taylor@usdoj.gov

ERIC S. DREIBAND
Assistant Attorney General

_/s/ Sameena Shina Majeed_____
SAMEENA SHINA MAJEED
Chief

_/s/ Onjil McEachin_____
CATHERINE A. BENDOR
Deputy Chief
ONJIL McEACHIN
KATHERINE A. RAIMONDO
ELISE SANDRA SHORE
Trial Attorneys
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street, NE
Washington, DC 20530
Phone: (202) 353-4136
Fax: (202) 514-1116
Email: Onjil.McEachin@usdoj.gov
Email: Katherine.Raimondo@usdoj.gov
Email: Elise.Shore@usdoj.gov

Dated:  January [X], 2020

**FOR DEFENDANTS:**

Don D. Gribble, II #12163
Stephen H. Netherton #26039
Hite, Fanning & Honeyman LLP
100 North Broadway, Suite 950
Wichita, KS 67202-2209
Telephone: 316-265-7741
Facsimile: 316-267-7803
gribble@hitefanning.com
netherton@hitefanning.com

Defendant Thong Cao

Defendant Mai Cao

19

**IT IS SO ORDERED** this __17th__ day of ___January___, 2020.

_____
UNITED STATES DISTRICT JUDGE

**Appendix A**

Aggrieved Persons

Rhonisha Bryant

Melissa George

April Goodman

Kamilah Guest

Jamie Herron

Malika Hollumn

Christina Houston

Rebecca Olsen

Rebecca Page

Tonya Wilson

Ruth Wright

## **Appendix B**

### **FULL AND FINAL RELEASE OF CLAIMS**

In consideration for the parties' agreement to the terms of the Consent Order entered in the case of <u>United States v. Thong Cao, et al,</u> 6:17-cv-01310 (D. Kan.), as approved by the United States District Court for the District of Kansas, and in consideration for the payment of $_____$, I, _____, on behalf of myself and my heirs, executors, administrators, personal representatives and assigns, hereby release and forever discharge Thong and Mai Cao, as well as their heirs, insurers, executors, personal representatives, successors and assigns ("Released Parties"), from any and all past, present or future claims, demands, obligations, actions, causes of action, wrongful death claims, survivorship claims, rights, damages, costs, loss of services, expenses, or compensation of any nature whatsoever, known or unknown, now existing or which may hereafter arise out of the alleged incident or incidents of harassment, retaliation, or any other claims that were alleged in the Complaint in this lawsuit (the "Occurrence").

I further represent and warrant that I am not aware of any other person or entity who may claim through me in a derivative manner against the Released Parties for any claims, demands, obligations, or causes of action referred to in the Consent Order, or who may maintain an action against or recover damages from the Released Parties for the alleged damages incurred by me, including without limitation any spouse, child, parent, relative, employer, insurer, attorney lienholder, workers' compensation lienholder, health care provider, or other subrogated interest, and that I have the sole right and exclusive authority to execute this Release and receive the sum specified in it. I have not sold, assigned, transferred, conveyed, or otherwise disposed of any of the claims, demands, obligations, or causes of action related to the Occurrence.

I further agree to defend, indemnify and hold harmless the Released Parties against any claim, demand, action, cost, expense, attorneys' fee, loss, judgment or liability the Released Parties may be subjected to by any person or entity who may have a lien against or legal interest in the proceeds of this settlement received by me or who may claim through me in a derivative manner against the Released Parties for any cause arising from or related to the Consent Order or the Occurrence.

I agree and acknowledge that this payment shall not be considered an admission by any party hereto of any liability or wrongdoing; and that no past or present wrongdoing on the part of any party shall be implied by any payments.

I also acknowledge that I have completely read all terms of this Release and that such terms are fully understood and voluntarily accepted by me.

Executed this _____ day of _____, 2020.

_____
Signature

_____
Print Name

_____
Home Address

_____
Home Address Continued